MARÍA DAMIANI FRANCO, Plaintiff and Appellant, *v.* ELÍAS DONATIU MALDONADO ET AL., Defendants and Appellees. MARÍA DAMIANI FRANCO, Plaintiff and Appellee, *v.* ELÍAS DONATIU MALDONADO ET AL., Defendants and Third-Party Plaintiffs and Appellees, *v.* THE COMMONWEALTH OF PUERTO RICO, Third-Party Defendant and Appellant, ANTONIO SÁNCHEZ CUARTERO ET AL., Plaintiffs and Appellees, *v.* ELÍAS DONATIU MALDONADO ET AL., Defendants and Third-Party Plaintiffs and Appellees, *v.* THE COMMONWEALTH OF PUERTO RICO, Third-Party Defendant and Appellant.

Nos. R-65-116,     Decided March 25, 1968.
R-65-117.

810

*Gaspar Gerena Bras* for plaintiff-appellant-appellee. *J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras, Acting Solicitor General,* and *Adaljisa Díaz de Collazo, Assistant Solicitor General,* for third-party defendant and appellant. *Juan Enrique Géigel, Guillermo Silva, Hernán G. Pesquera,* and *Miguel A. Jiménez* for defendants and third-party plaintiffs and appellees.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

On December 15, 1961, the arrival of President Kennedy to Puerto Rico was announced. A little after noon the public began to gather all along the Baldorioty de Castro Avenue. The persons gathered there crossed the avenue from one side to the other. They were waiting for the presidential party.

In the intersection of Las Flores Street with the Baldorioty de Castro Avenue, an accident occurred between two vehicles during the evening: one which was travelling along Las Flores Street towards the North, and another which was travelling along the Avenue towards the West. As a result of the collision, a pedestrian, María Damiani Franco, and passengers of the two vehicles were injured. The pedestrian sued the drivers and owners of both vehicles, and the insurance company of one of these. The defendants, Donatiu, the corporation which was owner of the vehicle which Donatiu was driving, and its insurance company filed a complaint against coparty, as well as a third-party complaint against the State alleging that it was responsible for the peace officer's conduct who unduly gave the right of way to the vehicle which was travelling along Las Flores Street. The drivers of the two vehicles sued each other. In the case filed against Donatiu, the latter filed a third-party complaint against the Commonwealth.

The trial court described the accident thus:

"6. Between 3:00 and 3:30 of December 15, 1961, Rosario Prado Sánchez was driving a Chevrolet automobile along Las Flores Street from south to north together with two fellow workers. When she reached the intersection of said street with the Baldorioty Avenue, the Police Captain Alfredo Ortiz Aponte, who was standing more or less between the marginal street

which runs parallel to the Baldorioty Avenue by the south side and the avenue itself, ordered the driver to stop.

"7. Mrs. Prado Sánchez obeyed and stopped. Minutes later, Captain Ortiz Aponte himself ordered Mrs. Prado Sánchez to continue her course. Mrs. Prado Sánchez obeyed the signal, and started her vehicle towards the south. She crossed the marginal street which runs parallel to the Baldorioty Avenue by the south, she also crossed the part or portion of the avenue which had the traffic from San Juan to the airport, and continued her course to cross the other half or portion of the Baldorioty Avenue, that is, the north highway which had the traffic from the airport towards San Juan.

"8. When the Chevrolet automobile entered that portion or part of the Baldorioty Avenue, the collision occurred with the Station Wagon which Elías Donatiu Maldonado was driving, accompanied by a client, at a moderate speed by the right lane, that is, the extreme north of the Baldorioty Avenue.

"9. At the moment in which the vehicle driven by Donatiu Maldonado, travelling from east to west along the Baldorioty Avenue, was reaching the intersection of said avenue with Las Flores Street, the green light of the semaphore located in said intersection was in favor of Donatiu Maldonado.

"10. At that moment there was no policeman, in the part or portion of the north side of the Baldorioty Avenue, manually controlling or directing the traffic which was travelling along said part of the avenue from east to west, and Donatiu Maldonado in seeing that the traffic light was in his favor, continued his course by the Baldorioty Avenue and entered the intersection of the latter with Las Flores Street, and the Station Wagon he was driving was hit by the Chevrolet automobile driven by Mrs. Prado Sánchez.

"11. The Station Wagon driven by Donatiu Maldonado received on its left-front side the impact of the right-front side of the vehicle driven by Mrs. Prado Sánchez. As a result of the collision, the Chevrolet automobile swerved towards the left and stopped in the second lane of the north side of the Baldorioty Avenue, facing San Juan.

"12. When the Station Wagon received the impact of the Chevrolet on the left-front door, the vehicle swerved, landing on the safety isle between the Baldorioty Avenue and the mar-

ginal street at the north side of the avenue. There he ran over María Damiani Franco, who was standing there waiting for the chance to cross the Baldorioty Avenue and reach Las Flores Street. After running over María Damiani Franco, the Station Wagon which was completely out of control, continued its course forward, and went down a slight grade in the marginal street at the north side of the Baldorioty Avenue, and ran for a stretch of approximately fifty or sixty feet of it."

The trial court concluded as a matter of law that "it did not [have] the least doubt that the collision between the Chevrolet automobile driven by Rosario Prado Sánchez and the Station Wagon driven by Elías Donatiu Maldonado, was caused by the negligence and carelessness of the officers of the State Police in charge of directing and controlling traffic in the intersection of the Baldorioty Avenue and Las Flores Street, the day of the arrival of President Kennedy."

Pursuant to this conclusion, the complaint filed by María Damiani Franco against the drivers and owners of the vehicles involved in the accident, as well as against the insurance company of one of these, was dismissed, but "having filed . . . a third-party complaint against the Commonwealth, and it being proved to the satisfaction of the court in this case that the accident was caused by the sole and exclusive negligence of the police officers of the Commonwealth of Puerto Rico, the court decides and concludes that according to the case law established in the United States [citations] the complaint of María Damiani Franco must be considered amended to conform it to the evidence including therein the Commonwealth of Puerto Rico as defendant party in the original suit." It ordered the Commonwealth to pay a compensation of $15,000.

It dismissed the complaint filed by Donatiu against Rosario Prado and her husband Antonio Sánchez Cuartero, and the one filed by them against Donatiu, the owner of the vehicle the latter was driving, and the insurance company,

but in this latter case, it ordered the Commonwealth as third-party defendant to pay the plaintiffs the amount of $1,800 for the damages of the Chevrolet automobile, and the amount of $1,200 as compensation for the bodily injuries which Mrs. Prado suffered in the accident.

María Damiani Franco and the Commonwealth appealed. Both writs of review were issued. Mrs. Damiani "does not agree with that part of the judgment which dismisses her complaint against the defendants Elías Donatiu Maldonado, Jack Feldstein, Inc., and Fireman's Fund Insurance Company, for which reason she requests that said part be reviewed because the trial court erred in weighing the evidence and stating that the defendant, Elías Donatiu Maldonado, 'did not commit any act or fault which could constitute negligence or carelessness on his part.'" The Commonwealth raises a question of procedure: that since it was sued to compensate the defendants so that the latter be exonerated from liability, it is not proper to order it to compensate the plaintiff, however, in its brief it considers the aspect of its liability.

Is the evaluation of the facts made by the trial court imposing liability for the accident on the Commonwealth correct? We believe it is not. The applicable law does not justify that conclusion.

The evidence established that when the accident occurred a great number of persons was gathered along the Baldorioty Avenue, as well as crossing the Avenue from one side to the other awaiting the arrival of President Kennedy. In the intersection where the accident occurred there was a group of policemen who were directing traffic. Mrs. Prado was driving her Chevrolet automobile along Las Flores Street, and when she reached the marginal street a peace officer ordered her to stop. She obeyed and continued her course when the officer ordered her to do so. She crossed the marginal

street, the south portion of the avenue and when she began to cross the north portion, the collision with the Station Wagon driven by Donatiu occurred. The Station Wagon swerved after the impact "landing on the safety isle between the Baldorioty Avenue and the marginal street at the north side of the avenue. There he ran over María Damiani Franco, who was standing there. . . . After running over María Damiani Franco, the Station Wagon, which was completely out of control, continued its course forward, and went down a slight grade in the marginal street at the north side of the Baldorioty Avenue, and ran along a stretch of approximately fifty or sixty feet." The events which occurred after the impact reveal that the Station Wagon was being driven at a speed in excess of the one advisable under the circumstances present in the intersection. Taking into consideration the conditions of agglomeration of persons which existed there at that time, it was the duty of the driver to drive his vehicle with more care than the ordinary, and the fact that the green light was in his favor, did not authorize him to continue his course without the due precautions.[1] As we stated in *Pereira* v. *Commonwealth*, 91 P.R.R. 728, 731 (1965): ". . . the green light should not be an order for a driver to drive his car against any vehicle or person who is on his way, even if they are not within their rights." See also, *Briales Aldrich* v. *Torres*, 89 P.R.R. 797 (1964).

In *Lewis* v. *Quinn*, 101 A.2d 382 (Penn. 1954), the Supreme Court of Pennsylvania in ratifying the ruling laid

---

[1] We copy from the driver Donatiu's cross-examination:

"Q. And were you watching the green light?

"A. I was looking forward.

"Q. Towards the light, and you did not look sidewards?

"A. The semaphores were functioning normally and I continued forward towards the light.

"Q. But you did not look sidewards?

"A. I have no reason to look sidewards."

down in a previous case, stated what seems to us the best exposition of the rule to be observed by a driver in crossing an intersection:

"... our cases have clearly established the fundamental proposition that due care is required at street intersections under all circumstances, whether or not a traffic officer or signal is present. ... It has been firmly established that a driver having the right of way at an intersection is still bound to use proper care under the circumstances to avoid collision with an approaching vehicle. *Alperdt* v. *Paige*, 292 Pa. 1, 140 A. 555; *Robinson* v. *Berger*, 295 Pa. 95, 144 A. 899; *Campagna* v. *Lyles*, 298 Pa. 352, 148 A. 527; *Curry* v. *Willson & Sons*, 301 Pa. 467, 152 A. 746; *Bailey* v. *C. Lewis Lavine, Inc.*, 302 Pa. 273, 153 A. 422; *Frank* v. *Pleet*, 87 Pa. Super. 494. ... He must be vigilant, must exercise a high degree of care, must have his car under complete control, and must look, and see what is visible, before attempting to cross the intersecting street. This duty has not been relaxed by the introduction of traffic officers and signals, both of which are intended to facilitate traffic and render crossings less dangerous. The driver has the help of the officer or mechanical device, but cannot dispense with due care on his part by relying on them solely. He is still bound to the same degree of care as before the introduction of these modern aids to travel. He must recognize them, and obey them, but he cannot use them under any circumstances to eliminate the exercise of due care on his part. The signal to cross is not a command to go, but a qualified permission, and the qualification is to proceed lawfully and carefully, as a prudent man would under the circumstances, which certainly requires looking to the right and left before entering upon the intersecting street. To hold otherwise, and as contended by defendants, would be to relieve drivers from vigilance and careful driving at street intersections, and license them to drive blindly where traffic is most dangerous. It would greatly increase the peril of street crossings for both pedestrians and motorists. It is for this reason that we would emphasize the fact that, so far as the degree of care required of motorists or other drivers at street intersections is concerned, there has been no change in the law of negligence by the introduction of traffic officers and signals."

■■ The foregoing establishes that the only one responsible for the accident was Donatiu. The Commonwealth cannot be held liable because a policeman ordered Mrs. Prado to continue her course. The Court expressed itself thus in *Coffey. v. Slingerland*, 50 P.2d 830 (Cal. 1935):

". . . The bald, unqualified statement that one receiving a direction or signal from a traffic officer authorized by ordinance so to give traffic directions thereby has an absolute right to cross an intersection, irrespective of the movement of other traffic, is not a correct statement of the law. This right to proceed at the direction of a traffic officer is always conditioned upon the continued exercise of due care by the person obeying such direction, so that the rights of other persons in the same intersection may be properly safeguarded. Such direction of a traffic officer is not to be complied with if compliance would probably result in an accident. Under all circumstances, due care must be exercised, and such exercise of due care is paramount to the duty of obeying the traffic officer's signal."

Apart from the fact that the policeman's signal was not an unconditional license to continue forward, the intervention of Mrs. Prado was not a decisive factor in the accident. If she was guilty of negligence, it was slight.

It is now proper to determine the amount of compensation. The trial court concluded that: "As a result of the accident María Damiani Franco suffered the following fractures: a comminuted compound fracture of the middle third of the tibia and the left fibula; a comminuted compound fracture of the third distal of the tibia and the right fibula; a fracture of the third distal of the right radius; fracture of the left humerus, fracture of the second, third, fourth, fifth, sixth, seventh and eighth left side ribs. In addition to the fractures summarized herein, she also suffered a cerebral contusion and multiple wounds and contusions in the right arm and different parts of the body. . . . As a result of the injuries she received in the accident, María Damiani Franco lost consciousness at the very moment of the accident, and she re-

mained in a total state of unconsciousness until approximately one month and a half after the time of the accident. When she regained consciousness, she found herself in the Municipal Hospital, with her legs in a plaster cast and all of her body in great pain. She was confined three months in the Municipal Hospital, and afterwards she was taken by ambulance to the Presbyterian Hospital, where Dr. Sabatelle operated on her. She was confined for about one month in the Presbyterian Hospital, and then she went home, where she was confined to a bed for a long time. . . . As a result of the accident, María Damiani Franco was physically disabled, she cannot walk by herself, she needs the help of a cane, and she cannot go out alone. . . . At the time of the accident, this claimant, who is a widow and is approximately sixty-seven years old, lived with one of her daughters in 204 Las Flores Street, and she took care of a lottery agency which had been given to her, and which gave her reason to go out frequently. After the accident, she became disabled. The claimant has spent a total amount of $618.21 in medicines and medical fees."

Taking into consideration the plaintiff's age, we believe that a compensation of $30,000 is reasonable.

In view of the foregoing it is proper (1) to reverse the judgment rendered by the Superior Court, San Juan Part, in civil case number 62-6202 and render another dismissing the third-party complaint;[2] (2) to reverse the judgment rendered in civil case number 62-5587 which held the Commonwealth liable, and to render another sustaining the complaint ordering the defendants Elías Donatiu, Jack Feldstein, Inc., and Fireman's Insurance Company, to pay the plaintiff the amount of $30,000 and $2,000 for attorney's fees.

---

[2] In this case, the plaintiffs did not request the review.